The Northern Assurance Co. of England vs. Hotchkiss and another.

THE NORTHERN ASSURANCE COMPANY OF ENGLAND, Respondent, vs. HOTCHKISS and another, imp., Appellants.

*May 15 — June 20, 1895.*

*Suretyship: Bond of insurance agent: Action for breach: Pleading.*

1. A joint and several bond having been executed to an insurance company by one of its agents as principal and other persons as sureties, conditioned for the faithful discharge by the agent of his duties as such and the accounting for and paying over of all moneys received by him, the company may recover, in an action upon the bond against the agent and his sureties jointly, the amount of money which he has received and refused to pay over.

2. The different items of moneys so received and not paid over by the agent do not constitute separate causes of action.

3. In the action upon the bond it need not be alleged that it was executed upon a consideration, that being sufficiently imported by the seal.

APPEALS from orders of the circuit court for Eau Claire county: W. F. BAILEY, Circuit Judge. *Affirmed.*

The complaint alleges, in effect, the incorporation of the plaintiff, and its being duly licensed to do business in this state; that November 24, 1893, the plaintiff having appointed the defendant Thomas W. Thomas as its agent for the city of Eau Claire, the said Thomas, as principal, and the defendants *Hotchkiss* and *Ellis*, as sureties, executed a bond wherein and whereby they are held and firmly bound unto the plaintiff in the sum of $750, to be paid to the plaint-

iff, its successors or assigns, and for which payment well and truly to be made they bound themselves, their heirs, executors, and administrators, jointly and severally, firmly by said bond; that said bond was duly sealed and conditioned as follows: "If the said T. W. Thomas shall in all respects observe and fulfill the instructions of [the plaintiff] which may be given to him in relation to such agency through its special agents or other officers or the manager at Chicago, and shall duly and properly account for, pay over, and apply all sums of money which may be received by him as such agent, whether for premiums of insurance, or with which to pay losses, or upon salvages, collections, or otherwise, and shall also duly and properly account for and apply all goods, chattels, or other property which may come into his hands or possession or under his control for and in behalf of [the plaintiff]; and shall keep true and correct books of account, and make regular and correct reports of the business transacted by him to the said company; and shall in all other respects well and faithfully discharge and perform his duties as such agent; and shall, upon the termination of his agency, from whatever cause, deliver up and hand over all of the money, books, accounts, memoranda, property, effects, and other things belonging to [the plaintiff], or connected with or growing out of the said agency, to such person or persons as [the plaintiff] shall order and direct, then this obligation to be void and of no effect; otherwise to remain in full force and virtue. The sureties on this bond waive notice of any default the said principal may or shall at any time make. Proof of partnership or incorporation waived."

The complaint further alleges that said Thomas continued to act as and be such agent up to March 3, 1894, when his agency was terminated; that as such agent he received in the aggregate $321.13 in premiums collected of various persons therein named, which money belonged to the plaintiff, and which he has not paid to the plaintiff, although

payment thereof was demanded from him and the other defendants March 3, 1894, and at divers times thereafter; that November 4, 1893, said Thomas, as such agent, issued and delivered to the Chippewa River & Menomonie Railway Company the plaintiff's policy of insurance therein described, and received from said railway company $70 as the premium therefor, but that he did not pay the same to the plaintiff, nor any part thereof; that January 19, 1894, said Thomas, with the consent of the plaintiff and the railway company, canceled said policy; that Thomas represented to the plaintiff that it was so canceled without incurring any obligation on the part of the plaintiff, but that April 26, 1894, the railway company demanded from the plaintiff $56.46 on account of said returned premium, and the plaintiff was compelled to and did pay the same. Judgment is demanded for the two amounts mentioned.

To that complaint the defendants *Hotchkiss* and *Ellis* separately demurred, on the ground of improper joinder of causes of action, and that the complaint fails to state facts sufficient to constitute a cause of action against them as such sureties. From orders overruling such demurrers respectively, the said *Hotchkiss* and *Ellis* respectively appeal.

The cause was submitted for the appellants on the brief of *J. F. Ellis,* and for the respondent on that of *Doolittle & Shoemaker.*

CASSODAY, J. By the express terms of the bond, Thomas, as principal, and *Hotchkiss* and *Ellis,* as sureties, "are held and firmly bound unto" the plaintiff in the sum named, and "for which payment well and truly to be made" they thereby bound themselves, their "heirs, executors, and administrators, jointly and severally." The obligation is not to guaranty collection, but for each and all together to pay in case of breach. This being so, and the breach of the bond by Thomas receiving the $321.13 as such agent, and then refus-

ing to pay it over on the termination of such agency, having been alleged, there can be no question as to the plaintiff's right to recover the amount in this action against the principal and his sureties. The same is true in respect to the item of $70 received by Thomas as such agent, and which he refused to pay over. That does not constitute a separate cause of action, but is merely another item in the same cause of action. In an action for the breach of a bond it is unnecessary for the complaint to allege that it was executed upon a consideration. The seal sufficiently imports consideration. The demurrers were without merit, and might well have been stricken out as frivolous.

The motion to strike out the respondent's brief, on the ground that it contains language disrespectful to counsel, is denied. The language complained of is too inconsequential to call for comment.

*By the Court.*— The two orders of the circuit court are both affirmed.